**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
BOSTON DIVISION**

| | |
|---|---|
| DUNKIN' DONUTS FRANCHISING LLC and BASKIN-ROBBINS FRANCHISING LLC,<br><br>                Plaintiffs,<br><br>    v.<br><br>NANCE PRETTO SIMMONS, a/k/a NANCE PRETTO-SIMMONS and NKJ LUSBY DONUTS LLC,<br><br>                Defendants. | C.A. No. _____ |

**COMPLAINT FOR DECLARATORY RELIEF**

**Introduction**

Plaintiffs Dunkin' Donuts Franchising LLC and Baskin-Robbins Franchising LLC (collectively, "Dunkin'") seek a declaratory judgment under 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure regarding the validity, scope, applicability and enforceability of releases provided by Defendant Nance Pretto Simmons ("Ms. Pretto"), including those provided when she voluntarily terminated two Store Development Agreements ("SDAs") she had entered into with Dunkin' in 2004 and 2011, respectively. The SDAs gave Ms. Pretto the exclusive right to develop and open a certain number of Dunkin' Donuts and/or Baskin-Robbins franchises in Calvert County, Maryland within a certain time period. She opened one such franchise, a combination Dunkin' Donuts/Baskin-Robbins which remains in operation under her supervision and control, in Lusby, Maryland, in 2006. Ms. Pretto informally identified a number of other potential sites for stores to Dunkin' during the terms of her SDAs, however Dunkin' indicated to her that these locations were unsuitable for a number of reasons.

Ms. Pretto eventually decided to terminate each of her SDAs. She entered into Termination of Store Development Agreements and Releases ("Termination Agreements") with Dunkin', pursuant to which Dunkin' refunded (or credited) to Ms. Pretto most of the fees she had paid for the development rights granted by the SDAs, and in exchange for which Ms. Pretto provided broad, general releases of any and all claims she may have had against Dunkin', under the SDAs or otherwise. Despite repeatedly and expressly releasing any and all claims she had or may have had against Dunkin,' since executing the second Termination Agreement in 2015, Ms. Pretto has complained that Dunkin' discriminated against her in its performance of its obligations under the SDAs, in particular, in rejecting various sites she claimed to have proposed, and has threatened in writing to file a lawsuit against Dunkin' for violation of the United States Civil Rights Act, 42 U.S.C. §1981 et seq.

While Dunkin' vigorously denies that it discriminated against Ms. Pretto in any way and at any time, it contends that Ms. Pretto is barred from asserting any claims against Dunkin' relating to or arising from the SDAs because she released and discharged all such claims. Defendants disagree with Dunkin's position and believe that they do have the right to assert and file such claims. Accordingly, an actual and justiciable controversy exists between the parties as to their rights and obligations under the Termination Agreements and scope and enforceability of the various releases Ms. Pretto provided. As stated more fully below, Dunkin' seeks a judicial declaration that the releases provided by Ms. Pretto are valid and enforceable and completely bar her from asserting a Civil Rights Act claim (or any other claim) against Dunkin' arising from the parties' performance of their obligations under the SDAs. In the alternative, Dunkin' seeks a judicial declaration that all of Ms. Pretto's discrimination claims relating to Dunkin's performance under the 2004 SDA and any claims relating to Dunkin's performance under the

2011 SDA that accrued more than four years ago are barred by the applicable statutory and contractual limitations periods.

**Parties**

1.   Plaintiff Dunkin' Donuts Franchising LLC ("DDF") is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts.

2.   It is engaged in the business of franchising independent businesspersons to operate Dunkin' Donuts stores throughout the United States.  DDF franchisees are licensed to use the Dunkin' Donuts trademarks, trade names, and service marks and to operate under the Dunkin' Donuts system, which involves the production, merchandising, and sale of baked goods, coffee and other beverages, and related products utilizing special equipment, equipment layouts, interior and exterior accessories, identification schemes, products, standards, specifications, proprietary marks, and information.

3.   The sole member of DDF is DB Franchising Holding Company LLC, which is a Delaware limited liability company with its principal place of business at Canton, Massachusetts. In turn, the sole member of DB Franchising Holding Company LLC is DB Master Finance LLC, a Delaware limited liability company.  The sole member of DB Master Finance LLC is Baskin-Robbins International LLC, a Delaware limited liability company.  The sole member of Baskin-Robbins International LLC is Baskin-Robbins Flavors LLC, a Delaware limited liability company.  The sole member of Baskin-Robbins Flavors LLC is Baskin-Robbins USA LLC, a California limited liability company.  The sole member of Baskin-Robbins USA LLC is Baskin-Robbins LLC, a Delaware limited liability company.  The sole member of Baskin-Robbins LLC is Mister Donut of America LLC, a Delaware limited liability company.  The sole member of Mister Donut of America LLC is Dunkin' Donuts USA LLC, a Delaware limited liability

company. The sole member of Dunkin' Donuts USA LLC is Dunkin' Donuts LLC, a Delaware limited liability company. The sole member of Dunkin' Donuts LLC is Dunkin' Brands, Inc., a Delaware corporation. The principal place of business of all the foregoing entities is at Canton, Massachusetts.

4. Plaintiff Baskin-Robbins Franchising LLC ("Baskin") is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts.

5. It is engaged in the business of franchising independent businesspersons to operate Baskin-Robbins stores throughout the United States.

6. Baskin franchisees are licensed to use the Baskin- Robbins trademarks, trade names, and service marks and to operate under the Baskin-Robbins system, which involves the production, merchandising, and sale of ice cream and related products utilizing special equipment, equipment layouts, interior and exterior accessories, identification schemes, products, standards, specifications, proprietary marks, and information.

7. The sole member of Baskin is DB Franchising Holding Company LLC, which is a Delaware limited liability company with its principal place of business at Canton, Massachusetts. In turn, the sole member of DB Franchising Holding Company LLC is DB Master Finance LLC, a Delaware limited liability company. The sole member of DB Master Finance LLC is Baskin-Robbins International LLC, a Delaware limited liability company. The sole member of Baskin-Robbins International LLC is Baskin-Robbins Flavors LLC, a Delaware limited liability company. The sole member of Baskin-Robbins Flavors LLC is Baskin-Robbins USA LLC, a California limited liability company. The sole member of Baskin-Robbins USA LLC is Baskin-Robbins LLC, a Delaware limited liability company. The sole member of Baskin-Robbins LLC

is Mister Donut of America LLC, a Delaware limited liability company. The sole member of Mister Donut of America LLC is Dunkin' Donuts USA LLC, a Delaware limited liability company. The sole member of Dunkin' Donuts USA LLC is Dunkin' Donuts LLC, a Delaware limited liability company. The sole member of Dunkin' Donuts LLC is Dunkin' Brands, Inc., a Delaware corporation. The principal place of business of all the foregoing entities is at Canton, Massachusetts.

8. Defendant Nance Pretto Simmons is an individual who resides in Calvert County, Maryland.

9. Upon information and belief, Defendant NKJ Lusby Donuts LLC ("NKJ") is a Maryland limited liability company with its principal place of business in Lusby, Maryland. Ms. Pretto is NKJ's Managing Member.

**Jurisdiction and Venue**

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a). The amount in controversy exceeds $75,000, exclusive of interest and costs, and the parties are diverse in citizenship. Subject matter jurisdiction is also conferred upon this Court by 28 U.S.C. §§ 2201 and 2202.

11. This Court has *in personam* jurisdiction over Defendants because they conduct and have conducted business in this district and the events giving rise to Dunkin's claims occurred in this district. More particularly, and among other things:

    a. Ms. Pretto, on behalf of herself and as Managing Member of NKJ, traveled to Massachusetts to attend training programs presented by Dunkin' relating to the operation of Dunkin' Donuts and Baskin-Robbins franchises.

    b. Since 2006, Defendants have sent weekly royalty payments to Dunkin' at its Massachusetts headquarters.

      c.      Dunkin' has sent certain payments to Defendants over the last several years from its Massachusetts headquarters, including payment obligations set forth under the two SDAs.

      d.      On a continuous basis since 2006, Dunkin' has performed, and continues to perform, a wide variety of services in Massachusetts for the benefit of Defendants in the operation of their combination Dunkin' Donuts/Baskin-Robbins franchise and which are of vital importance to the ongoing franchisor-franchisee relationship between Plaintiffs and Defendants, including but not limited to, product testing, product development, marketing, in-person training for franchisees and their representatives, development of online training for franchisees and their employees, processing of customer inquiries and complaints, and product supply planning.

12.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims in this action occurred in this district.

## Background Facts

13.    DDF is the franchisor of the Dunkin' Donuts franchise system.

14.    DDF has licensed others to operate stores selling baked goods, coffee and other beverages, and various other items identified with the "Dunkin' Donuts" trademark, service mark, and trade name and related marks and logos and to utilize confidential methods and procedures developed by Dunkin' for the operation of those stores.

15.    Baskin is the franchisor of the Baskin-Robbins franchise system.

16.    Baskin has licensed others to operate ice cream stores identified with the "Baskin-Robbins" trademark, service mark, and trade name and related marks and logos and to utilize confidential methods and procedures developed by Baskin for the operation of those stores.

## Ms. Pretto's Store Development Agreements, Termination Agreements and Releases

17. Ms. Pretto, together with her father and now ex-husband, entered into a Multiple Unit Store Development Agreement with Dunkin' on December 30, 2004 (the "2004 SDA"). A copy of the 2004 SDA is attached as Exhibit "A."

18. Pursuant to the 2004 SDA, Ms. Pretto and her partners were granted the exclusive right to develop and open up to three combination Baskin-Robbins/Dunkin' Donuts stores in Calvert County, Maryland according to an agreed-to timetable. *See* Exhibits A-C to 2004 SDA.

19. In exchange, they paid Dunkin', over time, $150,000 in Initial Franchise Fees, representing $50,000 for each new store to be developed.

20. The contract specified that these Initial Franchise Fees were non-refundable. *Id.* at Sec. 2(A).

21. Under the 2004 SDA, and as is the case with SDAs Dunkin' enters into with other potential developers and franchisees, it is the developer's – here, Ms. Pretto and her partners – sole responsibility to identify and secure sites it wants to develop and then present them to Dunkin' for approval.

22. Ms. Pretto and her partners, doing business as NKJ Lusby Donuts LLC, opened a Dunkin' Donuts/Baskin-Robbins franchise in Lusby, Maryland in July 2006 pursuant to a 20-year Franchise Agreement. A copy of the Franchise Agreement they entered into with Dunkin' on July 15, 2006 is attached as Exhibit "B."

23. Defendants have continuously operated the Lusby franchise since that time.

24. Since 2010, the Lusby store has consistently had more than $1 million in annual sales.

25. Ms. Pretto and her partners did not develop or open the other two stores described in the 2004 SDA.

26. While they identified some additional potential sites to Dunkin', for a variety of reasons, none of them were suitable.

27. For example, one site they presented to Dunkin' was located on the back side of a car wash and hidden from view from the street, therefore it did not meet Dunkin's criteria for visibility.

28. The 2004 SDA contains the following contractual limitation provision:

> ANY AND ALL CLAIMS AND ACTIONS ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE RELATIONSHIP OF DEVELOPER AND LICENSOR OR DEVELOPER'S OPERATION OF THE UNIT, BROUGHT IN ANY FORUM BY ANY PARTY HERETO AGAINST THE OTHER, MUST BE COMMENCED WITHIN TWO (2) YEARS AFTER THE DISCOVERY OF FACTS GIVING RISE TO SUCH CLAIM OR ACTION, OR SUCH CLAIM OR ACTION SHALL BE BARRED, EXCEPT FOR FINANCIAL OBLIGATIONS OF DEVELOPER.

Exh. A at p. 9, Sec. 18(F).

29. The original terms of the 2004 SDA was three years, therefore it was due to expire or terminate on December 29, 2007.

30. However, Dunkin' agreed to two requests by Ms. Pretto and her partners to extend the term of the 2004 SDA.

31. More specifically, on June 21, 2007, the parties entered into a First Amendment to Store Development Agreement, a copy of which is attached as Exhibit "C," by which the 2004 SDA was extended for an additional year, through December 29, 2008.

32. In Section 7 of the First Amendment, Ms. Pretto and her partners provided the following release in exchange for this extension:

> Developer does hereby release, remise and forever discharge Dunkin' Donuts Incorporated, Baskin-Robbins USA, Co., Togo's Eateries, Inc., their predecessors,

>successors and assigns, parents, subsidiaries and affiliated corporations, officers, directors, agents, employees and representatives, past and present, of any and all of such corporations of and from any and all claims, demands, causes of action, suits, debts, dues, duties, sums of money, accounts, reckonings, covenants, contracts (including without limitation any SDA, Franchise Agreement, Lease and Sublease), agreements, promises, damages, judgments, extents, executions, liabilities and obligations, both contingent and fixed, known and unknown, of every kind and nature whatsoever in law or equity, or otherwise, under local, state, or federal law, against any of them, which the Developer or any of one of them or their predecessors in interest, if any, ever had, now have, or which they, their heirs, executors, administrators, successors, or assigns hereafter can, shall, or may have, for, upon, or by reason of, any matter, cause, or thing whatsoever, from the beginning of the world to the date of these presents.

(the "2007 Release").

33. Section 8 of the First Amendment further provided:

>Without limiting the generality of the foregoing, but by way of example only, the foregoing release shall apply to any and all state or federal antitrust claims or causes of action; state or federal securities law claims or causes of action; state or federal RICO claims or causes of action; breach of contract claims or causes of action; claims or causes of action based on misrepresentation or fraud; breach of fiduciary duty; unfair trade practices (state or federal); and all other claims and causes of action whatsoever.

34. By letter dated May 20, 2008, a copy of which is attached as Exhibit "D," Dunkin' further extended the term of the 2004 SDA for one additional year, until December 29, 2009.

35. However, prior to that date, Ms. Pretto and her partners voluntarily decided to terminate the 2004 SDA.

36. More specifically, on April 8, 2009, Ms. Pretto and her partners entered into a Termination of Store Development Agreement and Release with Dunkin', a copy of which is attached as Exhibit "E" (the "2009 Termination Agreement").

37. While it was not obligated to do so under the contract, Dunkin' agreed to refund to Ms. Pretto and her partners $50,000 of the Initial Franchise Fees they paid pursuant to the 2004 SDA. *See* Exh. E at Sec. 2.

38. Ms. Pretto and her partners, in turn, provided Dunkin' with another, very broad release of all claims:

> The UNDERSIGNED (and each of them), individually and for itself, its parents, subsidiaries, affiliates, agents, employees, shareholders, officers, directors, partners, heirs, successors and assigns, do each hereby forever release, remise and discharge Licensor, its predecessors (including those entities defined above), successors and assigns, parents, subsidiaries and affiliated entities and their respective managers, members, officers, directors, agents, employees and representatives, past and present, of any and all of such entities, of and from any and all claims, demands, causes of action, suits, debts, dues, duties, sums of money, accounts, reckonings, covenants, contracts, agreements, promises, damages, judgments, extents, executions, liabilities and obligations, both contingent and fixed, known and unknown, of every kind and nature whatsoever in law or equity, or otherwise, under local, state, or federal law, against any of them, which the UNDERSIGNED or any one of them or their predecessors in interest, if any, ever had, now have, or which they, their heirs, executors, administrators, successors, or assigns hereafter can, shall, or may have, for, upon, of by reason of, any matter, cause or thing whatsoever arising out of or relating or incidental to the Store Development Agreement, from the beginning of the world to the date of these presents.

39. Exh. E at Sec. 4 (the "2009 Release").

Section 5 of the 2009 Termination Agreement further provided:

> Without limiting the generality of the foregoing, but by way of example only, the foregoing release shall apply to any and all state or federal antitrust claims or causes of action; state or federal securities law claims or causes of action; state or federal RICO claims or causes of action; breach of contract claims or causes of action; claims or causes of action based on misrepresentation or fraud; breach of fiduciary duty; unfair trade practices (state or federal); and all other claims and causes of action whatsoever.

40. Despite the termination of the 2004 SDA, Ms. Pretto and NKJ continued to operate the Lusby store and, as its sales and operations improved, Ms. Pretto approached Dunkin' about entering into a new SDA, this time on her own, without her former or any other partners.

41. Dunkin' agreed to Ms. Pretto's request.

42. On August 26, 2011, Ms. Pretto and DDF entered into a new Store Development Agreement, a copy of which is attached as Exhibit "F" (the 2011 SDA").

43. The 2011 SDA gave Ms. Pretto the exclusive right to open one Dunkin' Donuts franchise in Calvert County, Maryland, by August 1, 2014.

44. Rather than requiring her to pay the full $50,000 non-refundable franchise fee, however, the 2011 SDA only required Ms. Pretto to pay $15,000 for these development rights (among other things, and despite not being obligated to do so, Dunkin' credited her $25,000 from her prior SDA). *See* Exhibits A and B to 2011 SDA.

45. Just as it was under the 2004 SDA, under the 2011 SDA, it was the developer's – this time, Ms. Pretto – sole responsibility to identify and secure sites she wants to develop and then present them to Dunkin' for approval.

46. Ms. Pretto brought certain potential sites to Dunkin's attention pursuant to the SDA but none of them met Dunkin's criteria.

47. For example, one of the proposed sites lacked adequate visibility from the road, had poor ingress and egress onto and off of the property, and would not have allowed a drive-through window.

48. Another proposed site would have allowed a drive-through window but had inadequate parking and sit-down space for customers.

49. On November 13, 2013, Ms. Pretto and DDF entered into a First Amendment to Store Development Agreement, a copy of which is attached as Exhibit "G," by which the expiration or termination date of the 2011 SDA was extended to May 1, 2015.

50. In Section 3 of the First Amendment, Ms. Pretto agree to provide, and did provide, the following release in exchange for this extension:

> You hereby release, remise and forever discharge us and our predecessors, successors and assigns, parents, subsidiaries and affiliated corporations, officers, directors, agents, employees and representatives, past and present, of any and all of such corporations of and from any and all claims, demands, causes of action, suits, debts, dues, duties, sums of money, accounts, reckonings, covenants, contracts (including without limitation any SDA, Franchise Agreement, lease and Sublease), agreements, promises, damages, judgments, extents, executions, liabilities and obligations, both contingent and fixed, known and unknown, of every kind and nature whatsoever in law or equity, or otherwise, under local, state, or federal law, against any of them, which you or any of one of your predecessors in interest, if any, ever had, now have, or which you, your heirs, executors, administrators, successors, or assigns (collectively hereafter referred to as "You" and "Your") hereafter can, shall, or may have, for, upon, or by reason of, any matter, cause, or thing whatsoever, from the beginning of the world to the date of these presents.

(the "2013 Release").

51. Section 4 of the First Amendment further provided:

> Without limiting the generality of the foregoing, but by way of example only, the foregoing release shall apply to any and all state or federal antitrust claims or causes of action; state or federal securities law claims or causes of action; state or federal RICO claims or causes of action; breach of contract claims or causes of action; claims or causes of action based on misrepresentation or fraud; breach of fiduciary duty; unfair trade practices (state or federal); and all other claims and causes of action whatsoever.

52. In April 2015, Ms. Pretto voluntarily agreed to terminate the 2011 SDA. She entered into a Termination of Store Development Agreement and Release with DDF, a copy of which is attached as Exhibit "H" (the "2015 Termination Agreement").

53. While it was not obligated to do so, Dunkin' agreed to refund to Ms. Pretto $15,000.00. *See* Exh. H at Sec. 2.

54. Ms. Pretto, in turn, provided Dunkin' with another, very broad release of all claims:

> The DEVELOPER, individually and for itself, its parents, subsidiaries, affiliates, agents, employees, shareholders, officers, directors, partners, heirs, successors and assigns, do each hereby forever release, remise and discharge DUNKIN' DONUTS FRANCHISING LLC, their predecessors, successors and assigns, parents, subsidiaries and affiliated entities and their respective managers,

members, officers, directors, agents, employees and representatives, past and present, of any and all of such entities (all collectively referred to herein as "LICENSOR"), of and from any and all claims, demands, causes of action, suits, debts, dues, duties, sums of money, accounts, reckonings, covenants, contracts, agreements, promises, damages, judgments, extents, executions, liabilities and obligations, both contingent and fixed, known and unknown, of every kind and nature whatsoever in law or equity, or otherwise, under local, state, or federal law, against any of them, which the DEVELOPER or any one of them or their predecessors in interest, if any, ever had, now have, or which they, their heirs, executors, administrators, successors, or assigns hereafter can, shall, or may have, for, upon, of by reason of, any matter, cause or thing whatsoever arising out of or relating or incidental to the Store Development Agreement, from the beginning of the world to the date of these presents.

Exh. H at Sec. 4 (the "2015 Release").

55. Section 5 of the 2015 Termination Agreement further provided:

Without limiting the generality of the foregoing, but by way of example only, the foregoing release shall apply to any and all state or federal antitrust claims or causes of action; state or federal securities law claims or causes of action; state or federal RICO claims or causes of action; breach of contract claims or causes of action; claims or causes of action based on misrepresentation or fraud; breach of fiduciary duty; unfair trade practices (state or federal); and all other claims and causes of action whatsoever.

## The Current Dispute

56. Since executing the 2015 Termination Agreement, and despite repeatedly and expressly releasing any and all claims against Dunkin', Ms. Pretto has been complaining to Dunkin', elected officials, and others that Dunkin' discriminated against her when it rejected various potential sites Ms. Pretto brought to Dunkin' for approval under both the 2004 SDA and the 2011 SDA.

57. Ms. Pretto has contended in these communications that Dunkin's "rejections" of these additional sites were unreasonable and part of a pattern of discrimination by Dunkin' against African American women.

58. A list Ms. Pretto prepared of the additional sites she alleges Dunkin' rejected on a discriminatory basis during the terms of the 2004 and 2011 SDAs is attached as Exhibit "I."

59. Dunkin' denies that it discriminated at all against Ms. Pretto in the performance of its obligations under the 2004 SDA and 2011 SDA or at any other time.

60. It further denies that it rejected the additional sites Ms. Pretto proposed to Dunkin' under the SDAs (apart from her Lusby, Maryland location which Dunkin' did in fact approve) for any discriminatory or improper reason. To the contrary, Dunkin' at all times followed its standard approval procedures and applied its normal criteria in accordance with the terms of the SDAs in determining whether the sites Ms. Pretto proposed were suitable or not.

61. Nevertheless, Ms. Pretto has persisted in making complaints that Dunkin' discriminated against her in rejecting the sites listed in Exhibit I and in its performance of the 2004 and 2011 SDAs.

62. In April 2017, her lawyer contacted Dunkin' through their outside counsel and threatened to file a lawsuit on behalf of Ms. Pretto against Dunkin' for violation of the Civil Rights Act, 42 U.S.C. §1981 et seq.

63. In response to such threatened litigation, Dunkin's counsel reminded Ms. Pretto and her lawyer that she previously, voluntarily and repeatedly released any and all claims against Dunkin', including those she is now asserting and threatening to litigate.

64. Nevertheless, Ms. Pretto still asserts that she has the right to sue Dunkin' for violation of the Civil Rights Act relating to Dunkin's performance of its obligations under the 2004 and 2011 SDAs.

### COUNT I
**(Declaratory Judgment That Releases Are Valid and Enforceable and Bar Defendants From Asserting Any Claims Relating to or Arising from the 2004 SDA and 2011 SDA)**

65. The allegations of paragraphs 1 through 64 are hereby incorporated by reference.

66. By voluntarily and for adequate consideration providing the very broad and comprehensive 2007 Release, 2009 Release, 2013 Release and 2015 Release, Ms. Pretto expressly and completely released and discharged any and all claims she had or potentially had against Dunkin', including any and all claims relating to or arising from the 2004 SDA and 2011 SDA.

67. The 2007 Release, 2009 Release, 2013 Release and 2015 Release all unequivocally include and release any and all "claims and causes of action whatsoever," and therefore bar Ms. Pretto from asserting the claim she has recently (and since executing the 2015 Termination Agreement) been asserting and threatening to litigate, namely, that Dunkin' violated the Civil Rights Act in performing its obligations under the 2004 SDA and 2011 SDA.

68. Nevertheless, Ms. Pretto continues to assert such claim and contends that she has the right to file a lawsuit against Dunkin' on this basis.

69. Dunkin' disputes and disagrees with her position and claim in that regard.

70. As a result, an actual and justiciable controversy exists between and among the parties to this action, and a judicial ruling is necessary to enforce the valid releases Ms. Pretto provided and prevent her from asserting, pursuing and filing claims that she previously – and repeatedly – released and discharged (and which would only serve to waste the Court's and parties' resources).

71. Accordingly, Plaintiffs seek a judicial declaration by this Court that (1) the 2007 Release, 2009 Release, 2013 Release and 2015 Release are valid and enforceable, and (2) those Releases bar Ms. Pretto from asserting and litigating a claim that Dunkin' discriminated against her in its performance of the 2004 SDA and/or the 2011 SDA, or any other claims relating to or arising from the 2004 SDA or 2011 SDA.

**COUNT II**
**(In The Alternative – Declaratory Judgment that**
**Ms. Pretto's Claims are Barred by the Applicable**
**Statutory and Contractual Limitations Periods)**

72. The allegations of paragraphs 1 through 64 are hereby incorporated by reference.

73. Ms. Pretto agreed when she executed the 2004 SDA that any claims arising out of or relating to that agreement had to be brought within two years of her discovery of facts giving rise to such claims, or else such claims would be barred. Exh. A at p. 9, Sec. 18(F).

74. As set forth in Exhibit I, Ms. Pretto is now asserting and threatening to file a lawsuit complaining that Dunkin' discriminated against her in rejecting several sites she alleges she brought to Dunkin's attention during the term of the 2004 SDA, which was terminated in 2009.

75. Ms. Pretto was clearly aware of Dunkin's rejections of the sites she brought to its attention pursuant to and/or during the term of the 2004 SDA as well as the reasons Dunkin' provided for why those sites did not meet Dunkin's criteria and were not suitable more than two years ago, and indeed, in several cases, more than ten years ago.

76. Even if for some reason the Court were to find that the two-year limitation period set forth in the 2004 SDA did not apply, the statute of limitations for filing a Section 1981 Civil Rights claim is four years. *See, e.g., Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004).

77. Accordingly, any claims Ms. Pretto seeks and is threatening to litigate relating to or arising from the 2004 SDA are time-barred.

78. In addition, several of her claims relating to the 2011 SDA are also time-barred since, as reflected on Exhibit I, she is alleging that Dunkin' discriminated against her in rejecting several sites she brought to its attention more than four years ago.

79. Ms. Pretto, however, contends that she is still able to assert claims for discrimination against Dunkin' relating to its performance under the 2004 SDA and the 2011 SDA.

80. As a result, an actual and justiciable controversy exists between and among the parties to this action, and a judicial ruling is necessary to enforce the applicable statutory and contractual limitations periods and prevent Ms. Pretto from pursuing and filing claims (and thereby wasting the Court's and parties' resources) which are clearly time-barred.

81. Accordingly, Plaintiffs seek a judicial declaration by this Court that Ms. Pretto is barred from asserting and litigating any claims against Dunkin' arising from or relating to the 2004 SDA as well as any claims relating to or arising from Dunkin's performance under the 2011 SDA that accrued more than four years ago by the applicable statutory and contractual limitations periods.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Court:

a. Enter a judgment, pursuant to 28 U.S.C. § 2201, declaring that (1) the 2007 Release, 2009 Release, 2013 Release and 2015 Release are valid and enforceable, and (2) those Releases bar Ms. Pretto from asserting and litigating a claim that Dunkin' discriminated against her in its performance of the 2004 SDA and/or the 2011 SDA, or any other claims relating to or arising from the 2004 SDA or 2011 SDA;

b. In the alternative, enter a judgment pursuant to 28 U.S.C. § 2201, declaring that Ms. Pretto is barred from asserting and litigating any claims against Dunkin' relating to or arising from the 2004 SDA and any claims relating to or arising from Dunkin's performance under the 2011 SDA that accrued more than four years ago by the applicable statutory and contractual limitations periods; and

    c.    Award Plaintiffs such other relief as this Court may deem just and proper.

Respectfully submitted:

/s/ *Jaclyn M. Essinger*
PEPPER HAMILTON LLP
William M. Taylor (BBO#624981)
Jaclyn M. Essinger (BBO#679695)
125 High Street
19th Floor, High Street Tower
Boston, MA 02110
617.204.5100
taylorw@pepperlaw.com
essingerj@pepperlaw.com

*Attorneys for Plaintiffs*
*Dunkin' Donuts Franchising LLC*
*and Baskin-Robbins Franchising LLC*

Dated: June 21, 2017