UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DUNKIN' DONUTS FRANCHISING LLC
and BASKIN-ROBBINS FRANCHISING
LLC,

        Plaintiffs,

    v.

NANCE PRETTO SIMMONS, a/k/a NANCE
PRETTO-SIMMONS and NKJ LUSBY
DONUTS LLC,

        Defendants.

No. 1:17-cv-11152-MLW

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 55(b)**

Pursuant to Federal Rule of Civil Procedure 55(b)(1), Plaintiffs Dunkin' Donuts Franchising LLC and Baskin-Robbins Franchising LLC (collectively, "Dunkin'") submit this Memorandum of Law in Support of Dunkin's Motion for Default Judgment against Defendants Nance Pretto Simmons a/k/a Nance Pretto-Simmons ("Pretto") and NKJ Lusby Donuts LLC ("NKJ") (collectively "Defendants").

**I.    INTRODUCTION**

Despite being properly served with the Summons and Complaint, neither Defendant has answered or otherwise appeared to defend this action. Default was previously and properly entered against each Defendant, and Dunkin' now seeks the entry of a default judgment against both Defendants.

In its Complaint, Dunkin' seeks a declaratory judgment under 28 U.S.C. § 2201

1

and Federal Rule of Civil Procedure 57 declaring that releases provided by Ms. Pretto in connection with the termination of two Store Development Agreements ("SDAs") she entered into with Dunkin' are valid and enforceable and completely bar her or NKJ from asserting a Civil Rights Act claim (or any other claim) against Dunkin' arising from the parties' performance of their obligations under the SDAs. In the alternative, Dunkin' seeks a judicial declaration that all of Ms. Pretto's discrimination claims relating to Dunkin's performance under the 2004 SDA and any claims relating to Dunkin's performance under the 2011 SDA that accrued more than four years ago are barred by the applicable statutory and contractual limitations periods.

## II. PROCEDURAL AND FACTUAL BACKGROUND

### A. Procedural History

On June 21, 2017, Dunkin' filed a Complaint for Declaratory Judgment against Ms. Pretto and NKJ. *See* Complaint, ECF No. 1. Dunkin' served the Summons and Complaint upon NKJ on August 2, 2017 through personal service on NKJ's registered agent. *See* Affidavit of Service, ECF No. 4. Dunkin' served Ms. Pretto on November 4, 2017 in accordance with the Court's Order Permitting Service of Process by Alternate Means. *See* 11/2/2017 Order, ECF No. 22; Affidavit of Service, ECF No. 24.

Neither Ms. Pretto nor NKJ answered the Complaint or otherwise appeared in this action within the time provided by the Rules. *See* Req. for Entry of Default as to NKJ, ECF No. 6; Request for Entry of Default as to Pretto, ECF No. 27. Accordingly, the Clerk entered a default against NKJ on October 26, 2017 (*see* Entry of Default as to NKJ, ECF No. 19), and entered a default against Ms. Pretto on December 6, 2017. *See* Entry of Default as to Pretto,

ECF No. 28.[1] Despite being served with Dunkin's requests for entry of default against them, Defendants have still not answered, defended or even appeared in this action. *See* Affidavit of Jaclyn M. Essinger ¶¶ 8-10 (hereinafter "Essinger Aff.").

**B.     Facts**

    **1.     The 2004 SDA and Lusby Franchise**

In 2004, Ms. Pretto (along with her partners) and Dunkin' entered into a Multiple Unit Store Development Agreement (the "2004 SDA"), under which Ms. Pretto and her partners, in exchange for the payment of a $150,000 non-refundable franchise fee, were granted the right to open a limited number of Dunkin' Donuts/Baskin-Robbins stores in Calvert County, Maryland. Complaint ¶¶ 17-20, ECF No. 1. Under the 2004 SDA, it is the developer's – here, Ms. Pretto and her partners – sole responsibility to identify and secure sites it wants to develop and then present them to Dunkin' for approval. *Id.* at ¶ 21; *see also* 2004 SDA at §§ 1, 6 (Essinger Aff., Ex. A). The 2004 SDA contains the following contractual limitation provision:

> ANY AND ALL CLAIMS AND ACTIONS ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE RELATIONSHIP OF DEVELOPER AND LICENSOR OR DEVELOPER'S OPERATION OF THE UNIT, BROUGHT IN ANY FORUM BY ANY PARTY HERETO AGAINST THE OTHER, MUST BE COMMENCED WITHIN TWO (2) YEARS AFTER THE DISCOVERY OF FACTS GIVING RISE TO SUCH CLAIM OR ACTION, OR SUCH CLAIM OR ACTION SHALL BE BARRED, EXCEPT FOR FINANCIAL OBLIGATIONS OF DEVELOPER.

*See* 2004 SDA at § 18(F) (Essinger Aff., Ex. A).

In July 2006, Ms. Pretto, doing business as NKJ Lusby Donuts LLC, opened a Dunkin' Donuts/Baskin-Robbins franchise located at 174 Village Center Drive, Lusby,

---

[1] On November 27, 2017, the Court granted Dunkin's motion for an extension of time to file a motion for default judgment against NKJ. *See* 11/27/2017 Order, ECF No. 26. This Motion is filed in accordance with the Court's November 27 Order.

3

Maryland, 20657 (the "Lusby Franchise") pursuant to a 20-year Franchise Agreement. *See* Complaint ¶ 22, ECF No. 1; *see also* Franchise Agreement (Essinger Aff., Ex. B). Ms. Pretto signed the Franchise Agreement with Dunkin' on behalf of herself and as NKJ's Managing Member. *See* Franchise Agreement (Essinger Aff., Ex. B). Ms. Pretto owns 100% of NKJ and at all material times has been NKJ's Managing Member. *See* Complaint ¶ 9, ECF No. 1; Affidavit of Jeffrey L. Karlin ¶ 3 (hereinafter "Karlin Aff."). Defendants have continuously operated the Lusby Franchise since 2006. *See* Complaint ¶ 23, ECF No. 1.

### 2. Subsequent Agreements, Their Amendment and Termination, and Releases Provided by Ms. Pretto

As described below and set forth in detail in the Complaint, after 2006, Ms. Pretto and Dunkin' entered into a number of subsequent agreements and amendments, culminating with their execution of a 2015 Termination of Store Development Agreement and Release. *See, e.g.*, Complaint ¶¶ 31, 34, 36, 42, 49, 52, ECF No. 1. In fact, Ms. Pretto provided a number of broad, general releases to Dunkin', all of which are valid and enforceable and confirm that Ms. Pretto, on behalf of herself and (among others) her affiliates, including NKJ (for which she serves as managing member), released any and all claims that may have existed through April 14, 2015 related to the parties' performance of their obligations under the SDAs.

**(a)** *The 2007 Release*

Despite the fact that the 2004 SDA was set to expire on December 29, 2007, Dunkin' agreed to extend the terms of the 2004 SDA to provide Ms. Pretto and her partners more time to find suitable locations for the two additional sites they were required to open under the 2004 SDA. *See id.* at ¶¶ 25, 29-30. The June 21, 2007 First Amendment to Store Development Agreement extended the 2004 SDA through December 29, 2008. *See id.* at ¶ 31. In exchange for this extension, Ms. Pretto provided the following release:

4

> Developer does hereby release, remise and forever discharge Dunkin' Donuts Incorporated, Baskin-Robbins USA, Co., Togo's Eateries, Inc., their predecessors, successors and assigns, parents, subsidiaries and affiliated corporations, officers, directors, agents, employees and representatives, past and present, of any and all of such corporations of and from any and all claims, demands, causes of action, suits, debts, dues, duties, sums of money, accounts, reckonings, covenants, contracts (including without limitation any SDA, Franchise Agreement, Lease and Sublease), agreements, promises, damages, judgments, extents, executions, liabilities and obligations, both contingent and fixed, known and unknown, of every kind and nature whatsoever in law or equity, or otherwise, under local, state, or federal law, against any of them, which the Developer or any of one of them or their predecessors in interest, if any, ever had, now have, or which they, their heirs, executors, administrators, successors, or assigns hereafter can, shall, or may have, for, upon, or by reason of, any matter, cause, or thing whatsoever, from the beginning of the world to the date of these presents.

*See* June 21, 2007 First Amendment to Store Development Agreement at § 7 (the "2007 Release") (Essinger Aff., Ex. 3); *see also id.* at § 8. Thereafter, Dunkin' extended the term of the 2004 SDA one additional year, until December 29, 2009. *See* Complaint ¶ 34, ECF No. 1. Ms. Pretto and her partners did not develop or open the other two stores described in the 2004 SDA. *Id.* at ¶ 25. While they identified some additional potential sites to Dunkin', for a variety of reasons, none of them were suitable. *See id.* at ¶¶ 26-27; *see also* Submitted and Rejected Sites (Essinger Aff. Ex. 4).

### (b) *The 2009 Release*

In 2009, Ms. Pretto and her partners decided to voluntarily terminate the 2004 SDA. On April 8, 2009, Ms. Pretto and Dunkin' entered into the Termination of Store Development Agreement and Release. Complaint ¶¶ 35-36, ECF No. 1. As part of the termination and while not obligated to do so, Dunkin' agreed to refund Ms. Pretto and her partners $50,000 of the Initial Franchise Fees they paid pursuant to the 2004 SDA. *Id.* at ¶ 37. Ms. Pretto and her partners, in turn, provided Dunkin' with another, very broad release of all claims:

> The UNDERSIGNED (and each of them), individually and for itself, its parents, subsidiaries, affiliates, agents, employees, shareholders, officers, directors, partners, heirs, successors and assigns, do each hereby forever release, remise and discharge Licensor, its predecessors (including those entities defined above), successors and assigns, parents, subsidiaries and affiliated entities and their respective managers, members, officers, directors, agents, employees and representatives, past and present, of any and all of such entities, of and from any and all claims, demands, causes of action, suits, debts, dues, duties, sums of money, accounts, reckonings, covenants, contracts, agreements, promises, damages, judgments, extents, executions, liabilities and obligations, both contingent and fixed, known and unknown, of every kind and nature whatsoever in law or equity, or otherwise, under local, state, or federal law, against any of them, which the UNDERSIGNED or any one of them or their predecessors in interest, if any, ever had, now have, or which they, their heirs, executors, administrators, successors, or assigns hereafter can, shall, or may have, for, upon, of by reason of, any matter, cause or thing whatsoever arising out of or relating or incidental to the Store Development Agreement, from the beginning of the world to the date of these presents.

*See* Termination of Store Development Agreement and Release at § 4 (the "2009 Release") (Essinger Aff., Ex. 5); *see also id.* at § 5.

### (c) *The 2011 SDA and 2013 Release*

In 2011, Ms. Pretto approached Dunkin' about entering into a new SDA, this time on her own, without her former or any other partners. Complaint ¶ 40, ECF No. 1. On August 26, 2011, Dunkin' and Ms. Pretto executed a new SDA (the "2011 SDA") under which Ms. Pretto was granted the right to open one Dunkin' Donuts franchise in Calvert County, Maryland. *Id.* at ¶¶ 42-43; *see also* 2011 SDA (Essinger Aff., Ex. 6). Just as it was under the 2004 SDA, under the 2011 SDA, it was the developer's sole responsibility to identify and secure sites she wants to develop and then present them to Dunkin' for approval. Complaint ¶ 45, ECF No. 1. Ms. Pretto brought certain potential sites to Dunkin's attention pursuant to the SDA but none of them met Dunkin's criteria. *Id.* at ¶¶ 46-48; *see also* Submitted and Rejected Sites (Essinger Aff., Ex. 4).

On November 13, 2013, pursuant to a First Amendment to Store Development

Agreement, Dunkin' agreed to extend the 2011 SDA to May 1, 2015. Complaint ¶ 49, ECF No. 1. In exchange for this extension, Ms. Pretto provided Dunkin' with the following release:

> You hereby release, remise and forever discharge us and our predecessors, successors and assigns, parents, subsidiaries and affiliated corporations, officers, directors, agents, employees and representatives, past and present, of any and all of such corporations of and from any and all claims, demands, causes of action, suits, debts, dues, duties, sums of money, accounts, reckonings, covenants, contracts (including without limitation any SDA, Franchise Agreement, lease and Sublease), agreements, promises, damages, judgments, extents, executions, liabilities and obligations, both contingent and fixed, known and unknown, of every kind and nature whatsoever in law or equity, or otherwise, under local, state, or federal law, against any of them, which you or any of one of your predecessors in interest, if any, ever had, now have, or which you, your heirs, executors, administrators, successors, or assigns (collectively hereafter referred to as "You" and "Your") hereafter can, shall, or may have, for, upon, or by reason of, any matter, cause, or thing whatsoever, from the beginning of the world to the date of these presents.

*See* 2013 First Amendment to Store Development Agreement at § 3 (the "2013 Release") (Essinger Aff., Ex. 7); *see also id.* at § 4.

### (d) *The 2015 Termination Agreement and Release*

In April 2015, Ms. Pretto voluntarily agreed to terminate the 2011 SDA, and by doing so gave up any and all rights she had to develop or open any additional Dunkin' franchises. On April 14, 2015, Dunkin' and Ms. Pretto entered into a Termination of Store Development Agreement and Release. *See* Complaint ¶ 52, ECF No. 1. While it was not obligated to do so, Dunkin' agreed to refund to Ms. Pretto $15,000.00. *See id.* at ¶ 53. In turn, Ms. Pretto provided Dunkin' with another, very broad release of all claims:

> The DEVELOPER, individually and for itself, its parents, subsidiaries, affiliates, agents, employees, shareholders, officers, directors, partners, heirs, successors and assigns, do each hereby forever release, remise and discharge DUNKIN' DONUTS FRANCHISING LLC, their predecessors, successors and assigns, parents, subsidiaries and affiliated entities and their respective managers, members, officers, directors, agents, employees and representatives, past and present, of any and all of such entities (all collectively referred to herein as "LICENSOR"), of and from any and all claims, demands, causes of action, suits,

7

> debts, dues, duties, sums of money, accounts, reckonings, covenants, contracts, agreements, promises, damages, judgments, extents, executions, liabilities and obligations, both contingent and fixed, known and unknown, of every kind and nature whatsoever in law or equity, or otherwise, under local, state, or federal law, against any of them, which the DEVELOPER or any one of them or their predecessors in interest, if any, ever had, now have, or which they, their heirs, executors, administrators, successors, or assigns hereafter can, shall, or may have, for, upon, of by reason of, any matter, cause or thing whatsoever arising out of or relating or incidental to the Store Development Agreement, from the beginning of the world to the date of these presents.

*See* 2015 Termination of Store Development Agreement and Release (the "2015 Release") at § 4 (Essinger Aff., Ex. 8); *see also id.* at § 5.

### 3. The Current Dispute

Since executing the 2015 Termination Agreement and Release, and despite repeatedly and expressly releasing any and all claims against Dunkin', Ms. Pretto has been complaining to Dunkin', elected officials, and others that Dunkin' somehow discriminated against her when it rejected certain potential sites Ms. Pretto brought to Dunkin' for approval under both the 2004 SDA and the 2011 SDA. *See* Complaint ¶ 56, ECF No. 1. Ms. Pretto claims that Dunkin's "rejections" of these additional sites were unreasonable and part of a pattern of discrimination by Dunkin' against African American women. *Id.* at ¶ 57.

In April 2017, Ms. Pretto's attorney, Gerald A. Marks, contacted Dunkin's outside counsel, sent him a draft complaint by Ms. Pretto against Dunkin' asserting violation of the Civil Rights Act, 42 U.S.C. § 1981 *et seq.,* and threatened to file the complaint against Dunkin' on behalf of Ms. Pretto. Complaint ¶ 62, ECF No. 1. Dunkin' reminded Ms. Pretto and Mr. Marks that Ms. Pretto previously, voluntarily terminated her development agreements with Dunkin' (and thus any rights to develop any additional Dunkin' franchises) and released any and all claims against Dunkin,' including the claims asserted in the draft complaint. *See id.* at ¶ 63. The parties subsequently attempted to resolve their dispute through mediation, however those

efforts were unsuccessful. *See* Affidavit of Jeffrey A. Carr in Support of Renewed Mot. for Alt. Service ¶¶ 4-5, ECF No. 14.

Nevertheless, Ms. Pretto still asserts that she has the right to sue Dunkin' for violation of the Civil Rights Act relating to Dunkin's performance of its obligations under the 2004 and 2011 SDAs. *See* Complaint ¶ 64, ECF No.1. Indeed, on September 25, 2017, Ms. Pretto filed a lawsuit against Dunkin' in the United States District Court for the District of Maryland asserting discrimination claims pursuant to the Civil Rights Act. *See* Affidavit of Jeffrey A. Carr in Support of Renewed Mot. for Alt. Service ¶¶ 15, 17, ECF No. 14.[2]

## III. ARGUMENT

### A. Dunkin' is Entitled to a Default Judgment Against the Defendants

Dunkin' is entitled to a default judgment against the Defendants pursuant to Federal Rule of Civil Procedure 55. Furthermore, a default judgment may be entered without a hearing under Fed. R. Civ. P. 55, if "a court has jurisdiction over the subject matter and parties, the allegations in the complaint state a specific, cognizable claim for relief, and the defaulted party had fair notice of its opportunity to object." *Banco Bilbao Vizcaya Argentaria v. Family Rests., Inc. (In re Home Rests., Inc.)*, 285 F.3d 111, 114 (1st Cir. 2002); *see also* Fed. R. Civ. P. 55(b)(2)(A)-(D) (listing potential reasons a court may hold a hearing on a motion for default judgment, none of which apply here).

#### 1. The Court has Jurisdiction Over the Case and Parties

This Court has personal and subject matter jurisdiction over the parties. The Court has personal jurisdiction over the Defendants because they conduct and have conducted

---

[2] On October 28, 2017, Ms. Pretto filed an Amended Complaint in the Maryland action. *See Pretto v. Dunkin' Donuts Franchised Restaurants, LLC, et al.,* No. 8:17-cv-02846 (D. Md.), Amended Complaint, ECF No. 6.

9

business in this District and the events giving rise to Dunkin's claims occurred in this District. *See* Complaint ¶ 11, ECF No. 1. This Court also has subject matter jurisdiction based on diversity of citizenship, as complete diversity exists in this case and the amount in controversy exceeds $75,000. *See* Complaint ¶¶ 1, 4, 8-10, ECF No. 1. In declaratory judgment actions, the "amount in controversy 'is the value of the right or the viability of the legal claim to be declared[.]" *Kurra v. Synergy Comput. Sols., Inc.*, No. 15-cv-13952-ADB, 2016 U.S. Dist. LEXIS 127248, at *11 (D. Mass. Sep. 19, 2016) (explaining amount-in-controversy for claim seeking declaration that parties' agreement is unenforceable is "best approximated by the amount [plaintiff] stands to lose if the [agreement] is enforced."). If the Court declares that the releases provided by Ms. Pretto are not valid and enforceable, Dunkin' risks potential liability for discriminating against Defendants by failing to approve additional franchise locations, which could expose Dunkin' to damages to compensate Ms. Pretto for the impact of such discrimination, *e.g.*, the value of the franchises Ms. Pretto did not open, which value far exceeds the jurisdictional limit. *See* Complaint ¶¶ 56-57, 61; *see also* Karlin Aff. ¶¶ 4-5; *see also* Profit and Loss Statements Composite (Karlin Aff., Ex. A). Additionally, if the releases are found to be invalid, Dunkin' will have lost the value of the money Dunkin' paid Ms. Pretto in consideration for those releases, which totaled $75,000. *See* Complaint ¶¶ 37, 53, ECF No. 1.

2. **Defendants had Fair Notice and an Opportunity to Object, But have Failed to Appear or Defend**

The defaulted parties have been given and had fair notice of their opportunity to object. This matter has been pending since June 21, 2017. NKJ was served on August 2, 2017 and default was entered against NKJ on October 26, 2017. Ms. Pretto was served on November 4, 2017 and default was entered against her on December 6, 2017. Despite being properly served with not only the summons and Complaint but with Dunkin's requests for entry of default

against them, and otherwise being aware of this action, Defendants have failed to appear or defend. *See, e.g.*, 11/2/2017 Order at 7, ECF No. 22 (noting that, even before being formally served, "Pretto likely already has actual notice of this lawsuit"). Additionally, Dunkin' will serve the instant Motion on both Defendants. *See Amguard Ins. Co. v. Santos Remodeling, Inc.*, No. 14-14745-FDS, 2016 U.S. Dist. LEXIS 12906, at *6-7 (D. Mass. Feb. 3, 2016) (concluding "fair opportunity" requirement is satisfied where plaintiffs had been served and had an opportunity to respond to the motion for default judgment but failed to appear or defend).

      **B.**    **The Allegations of the Complaint State Specific, Cognizable Claims for Relief**

Dunkin' has set forth cognizable claims for declaratory relief. *See Amguard Ins. Co.*, 2016 U.S. Dist. LEXIS 12906, at *5-6 (granting motion for default judgment on declaratory judgment claim, noting the "case does not involve difficult questions of law, and the Court sees no reason why declaratory relief cannot be awarded."). Due to the entries of default, Defendants are "'taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability[.]'" *Ortiz-Gonzalez v. Fonovisa*, 277 F.3d 59, 62-63 (1st Cir. 2002). Before entering a default judgment, however, the Court "may examine the complaint, taking all well-pleaded factual allegations as true, to determine its legal sufficiency. *Amguard Ins. Co.*, 2016 U.S. Dist. LEXIS 12906, at *1-2 n.1 (noting "a court may also consider any affidavits or evidence on the record.").

      **1.**    **Dunkin's Complaint Sufficiently Alleges a Claim for Declaratory Judgment that the Releases Ms. Pretto Provided Are Valid and Enforceable and Bar Defendants From Asserting Any Claims Relating to or Arising from the 2004 SDA and 2011 SDA**

Dunkin' alleges that the 2007 Release, 2009 Release, 2013 Release and 2015 Release (collectively, the "Pretto Releases") all unequivocally include and release any and all

11

"claims and causes of action whatsoever," and therefore bar Defendants from asserting the claims Ms. Pretto has recently (and since executing the 2015 Termination Agreement) been asserting and threatening to litigate, namely, that Dunkin' violated the Civil Rights Act in performing its obligations under the 2004 SDA and 2011 SDA. Complaint ¶ 67, ECF No. 1. Nevertheless, Ms. Pretto continues to assert such claims, and contends that she has the right to file a lawsuit against Dunkin' on this basis. *Id.* at ¶ 69. Indeed, since the filing of this lawsuit by Dunkin', which Dunkin' promptly advised Ms. Pretto's counsel of, and sent him a courtesy copy of the Complaint, Ms. Pretto *has* filed a lawsuit against Dunkin' in another jurisdiction asserting that Dunkin' discriminated against her by refusing to offer Ms. Pretto additional locations that she requested to develop into Dunkin' franchises. *See* Affidavit of Jeffrey A. Carr in Support of Renewed Mot. for Alt. Service ¶¶ 6, 15, ECF No. 14; *see also* Maryland Action Complaint, Ex. F to the Carr Aff., ECF No. 14-6. Accordingly, Dunkin' has alleged the existence of an actual and justiciable controversy, and a judicial ruling is necessary to enforce the valid Pretto Releases. Complaint ¶ 70, ECF No. 1.

The factual allegations in the Complaint establish that the Pretto Releases are valid and enforceable.[3] "Massachusetts law favors the enforcement of releases." *Sharon v. City of Newton*, 437 Mass. 99, 105 (2002). "Releases are a form of contract, and . . . . Massachusetts

---

[3] The 2007 Release and the 2013 Release are governed by Massachusetts law because they are included in amendments to the 2004 SDA and 2011 SDA, respectively, each of which contains a Massachusetts choice of law provision. *See* 2004 SDA at § 18(D) (Essinger Aff., Ex. 1) (providing Massachusetts law governs); 2007 Release at § 10 (Essinger Aff., Ex. 3) (providing amendment to be "made part of the [2004] SDA."); 2011 SDA at § 10(B) (Essinger Aff., Ex. 6) (providing Massachusetts law governs); 2013 Release at § 6 (Essinger Aff., Ex. 7) (providing amendment to be "made part of the [2011] SDA."). The 2009 Release and 2015 Release do not contain choice of law provisions. In the absence of an applicable choice of law provision, Massachusetts courts look to the law of the state that has "'the most significant relationship to the transaction and the parties.'" *Rottner v. AVG Techs. United States, Inc.*, 943 F. Supp. 2d 222, 227 (D. Mass. 2013). Here, Massachusetts and Maryland are the only states with a "'significant relationship to the transaction and the parties.'" *Id.*; *see also* Complaint ¶¶ 1, 4, 8-9, 11, 22, ECF No. 1. However, whether analyzed under Massachusetts or Maryland law, the result is the same: the releases are valid and enforceable. *See Royal Bus. Grp., Inc. v. Realist, Inc.*, 933 F.2d 1056, 1064 (1st Cir. 1991) (unnecessary to make formal choice of law where "result will not vary.").

courts will enforce a general release disposing of all claims and demands arising out of any transactions between the parties, even if they did not have in mind all the wrongs which existed at the time of the release." *Diamond v. Pappathanasi*, No. SUCV2007-4117BLS1, 2009 Mass. Super. LEXIS 128, at *25-26 (Mass. Super. Ct. June 3, 2009) (citations omitted). Under Massachusetts law,

> while "a release may be prompted by the settlement of a specific dispute or resolution of a specific issue . . . broad wording in the release operates to settle all other, unrelated matters . . . . The mere fact that the release itself identifies the specific matter that prompted the parties to execute a release, does not, by itself, operate to restrict the scope of a release that contains broad language releasing all claims of whatever nature the party executing the release may have against the party to whom the release is given."

*Eck v. Godbout*, 444 Mass. 724, 728 (2005) (citations omitted). Massachusetts courts routinely enforce broad releases and explain that "[i]f the parties intended that there be limitations or exceptions to the scope of the releases, then they should have so stated." *Atlas Tack Corp. v. Crosby*, 41 Mass. App. Ct. 429, 433 (1996) (concluding claim barred by release that was "written in the broadest, most general terms – 'all manner of actions, causes of action . . . which [the plaintiff] ever had, now has or which it or its successors hereafter can, shall or may have for, upon or by reason of any matter, cause or thing whatsoever.'").

Maryland law likewise views releases as "contract[s] subject to 'ordinary contract principles.'" *Shutter v. CSX Transp., Inc.*, 226 Md. App. 623, 635, 130 A.3d 1143, 1150 (2016). Thus, under Maryland law:

> [W]hen the scope of [a release] agreement is stated in clear and unambiguous language, the words utilized to express this breadth should be given their ordinary meaning as there is no room for interpretation. . . . [S]ettlement agreements, as all other contracts . . ., are subject to interpretation in light of the settled and oft-repeated principles of objective construction. The written language embodying the terms of an agreement will govern the rights and liabilities of the parties, irrespective of the intent of the parties at the time they entered into the contract . . . . Where a contract is plain and unambiguous, there is no room for construction,

13

and it must be presumed that the parties meant what they expressed.

*Bernstein v. Kapneck*, 290 Md. 452, 459, 430 A.2d 602 (1981) (internal quotations and citations omitted). In the absence of fraud, accident, or mutual mistake, there are no grounds to vary, alter, or contradict a complete and unambiguous release agreement. *See Kramer v. Emche*, 64 Md. App. 27, 42, 494 A.2d 225, *cert. denied*, 304 Md. 297, 498 A.2d 1184 (1985).

Here, Ms. Pretto, on behalf of herself, and (among others) her affiliates, including NKJ (for which she at all times has served as managing member), released all claims that may have existed up through April 14, 2015. The Pretto Releases are incredibly broad and release any and all claims and causes of action whatsoever. In exchange for these releases, Dunkin' refunded or credited to Ms. Pretto most of the fees she had paid for the development rights it granted her in the SDAs. Accordingly, Dunkin' has established that the Pretto Releases are valid and enforceable, and that those Releases bar Ms. Pretto and NKJ from asserting a claim that Dunkin' discriminated against her in its performance of the 2004 SDA and/or the 2011 SDA, or any other claims relating to or arising from the 2004 SDA or 2011 SDA.

**2. Dunkin' has Sufficiently Alleged its Claim that Defendants' Claims are Barred by the Applicable Statutory and Contractual Limitations Periods**

Dunkin' has set forth a cognizable alternative claim seeking a declaration that, even if the Pretto Releases are not valid, Defendants' discrimination claims relating to Dunkin's performance under the 2004 SDA and any claims relating to Dunkin's performance under the 2011 SDA that accrued more than four years ago are barred by the applicable statutory and contractual limitations periods. *See* Complaint (Count II), ECF No. 1.

In fact, the 2004 SDA provides that any claims arising out of or relating to that agreement had to be brought within *two* years of discovery of facts giving rise to such claims, or else such claims will be barred. *See* 2004 SDA at § 18(F) (Essinger Aff., Ex. 1). Even if the

14

contractual limitations period is inapplicable, the statute of limitations for filing a Section 1981 Civil Rights claim is four years. *See, e.g., Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004).

Ms. Pretto is now asserting that Dunkin' discriminated against her in rejecting several sites she alleges she brought to Dunkin's attention during the term of the 2004 SDA, which was terminated in 2009, and several sites she brought to Dunkin's attention more than four years ago during the term of the 2011 SDA. *See* Complaint ¶ 74, ECF No. 1. A list Ms. Pretto prepared of the sites she alleges Dunkin' rejected on a discriminatory basis during the terms of the 2004 and 2011 SDAs include sites proposed in 2006-2012. *See* Submitted and Rejected Sites (Essinger Aff., Ex. 4).

Ms. Pretto was clearly aware of Dunkin's rejections of the sites she brought to its attention pursuant to and/or during the term of the 2004 SDA as well as the reasons Dunkin' provided for why those sites did not meet Dunkin's criteria more than two years ago, and indeed, in several cases, *more than ten years ago*. Complaint ¶ 75, ECF No. 1. Similarly, a discrimination claim based on any sites proposed more than four years ago are barred by the four year statute of limitations because any claim would have accrued at the time of the "'underlying incident' giving rise to the claim" – *i.e.*, more than four years ago. *Eck*, 444 Mass. at 730.

Accordingly, Dunkin' has established that even if the Pretto Releases are unenforceable, Defendants are barred from asserting and litigating any claims against Dunkin' arising from or relating to the 2004 SDA as well as any claims relating to or arising from Dunkin's performance under the 2011 SDA that accrued more than four years ago by the applicable statutory and contractual limitations periods.

IV.   CONCLUSION

For the foregoing reasons, Dunkin' respectfully requests that this Court grant its Motion for Default Judgment against Defendants, and:

(A) Enter a judgment, pursuant to 28 U.S.C. § 2201, declaring that the 2007 Release, 2009 Release, 2013 Release and 2015 Release are valid and enforceable, and bar Ms. Pretto and NKJ from asserting and litigating any claims that Dunkin' discriminated against her in its performance of the 2004 SDA and/or the 2011 SDA, or any other claims relating to or arising from the 2004 SDA or 2011 SDA;

(B) Or, in the alternative, enter a judgment pursuant to 28 U.S.C. § 2201, declaring that Ms. Pretto and NKJ are barred from asserting and litigating any claims against Dunkin' relating to or arising from the 2004 SDA and any claims relating to or arising from Dunkin's performance under the 2011 SDA that accrued more than four years ago by the applicable statutory and contractual limitations periods.

Respectfully submitted:

/s/ *Jaclyn M. Essinger*
PEPPER HAMILTON LLP
William M. Taylor (BBO#624981)
Jaclyn M. Essinger (BBO#679695)
125 High Street
19th Floor, High Street Tower
Boston, MA 02110
617.204.5100
taylorw@pepperlaw.com
essingerj@pepperlaw.com

*Attorneys for Plaintiffs*
*Dunkin' Donuts Franchising LLC*
*and Baskin-Robbins Franchising LLC*

Dated: January 5, 2018

## **CERTIFICATE OF SERVICE**

       I hereby certify that this document filed on January 5, 2018 through the Court's CM/ECF system will be sent electronically to the registered participants as identified on the NEF, and served via first class mail to Defendants' last known addresses as follows:

NKJ Lusby Donuts, LLC
c/o Reginald Pretto
65 Cambridge Road
Montclair, NJ 07042

Nance Pretto Simmons
4210 Beach Drive
Chesapeake Beach, MD 20732

                    /s/ *Jaclyn M. Essinger*
                    Jaclyn M. Essinger (BBO#679695)